Allen, J.
This is a bill filed to subject land sold and conveyed by Gibson to Woodson and by the latter to Iiedford, to the payment of the purchase money alleged to be due by Woodson to Gibson. That the lien of the vendor exists against the vendee and volunteers claiming under him, and against third persons who had notice that the purchase money was not paid, is laid down by all the elementary writers, and, I think, is now too clearly settled to be drawn in question. The lien, however, is the creature of a court of equity, formed upon a supposed intention of the parties; and wherever, from the circumstances of the case, it appears that the parties did not contemplate such a lien, it will not be established. There is strong reason in our country, where all incumbrances are required to be recorded, not to extend this secret equitable lien beyond the principles already established. The records are universally looked to with us, as disclosing all charges upon the property. Prudence dictates the propriety, in all cases, of retaining an express lien where the legal title is parted with. If the vendor, instead of adopting this course, chooses to rely upon his secret equitable lien, he should be cautious not to do any thing leading to the inference that no such lien was intended to be retained. If, from his acts, third persons may fairly infer that the personal credit of the vendee was looked to, it would be a fraud upon them to permit the lien to be set up against them.
Gibson, then residing in Gem'gia, constituted Strong his attorney in fact, with full power to sell and convey the land in question, and receive the purchase money. On the 27th May 1815, Strong sold to Woodson and made *344 him a deed. Gibson returned to Virginia in 1817, and in 1818 instituted a suit against his attorney Strong and Woodson, in which he sought to set aside the sale on the ground of fraud between his attorney and Woodson : he failed in his attempt to shew the fraud, and his bill was dismissed in 1823. Strong may be therefore dismissed from our view.
What a man does by his authorized attorney, he does himself, and the case is to be contemplated, so far as third persons are concerned, as a transaction between Gibson himself and Woodson. Gibson, then, in 1815, sold and conveyed the land to Woodson, and by his deed acknowledged the payment of the money. The admission in the deed, and a receipt for the purchase money endorsed on it, are not sufficient to repel the presumption of law that a lien was retained for the purchase money. The case of Saunders v. Leslie, cited at the bar, is a direct authority as to this point. On the day of the sale and conveyance, Woodson executed an instrument under seal, which sets out the terms of the contract. By this it appears, he was to give 2200 dollars for the land; of which 800 dollars is said to be paid down; 1000 dollars he retained to meet the claim of Randolph, then in suit, and 400 dollars on account of mrs. Gibson’s dower interest. Of this agreement Woodson retained a counterpart, which he filed with his answer. On the same day, Woodson gave a receipt to Strong, acknowledging the receipt from Strong as attorney in fact of Gibson, of the sum of 800 dollars, which sum was deposited in his hands in consequence of his having become the surety of Strong in two bonds taken under two writs of ne exeat sued out against Strong by the creditors of Gibson, and the money was to remain in his hands to abide the decision of those cases. This is all the evidence we have touching the transactions of that day.
*345 It is contended by Gibson’s counsel, that in truth no money was actually paid, and that Woodson has acquired the land without giving any thing at the time. The money retained to meet the Randolph claim, was paid to Randolph afterwards. And the controversy now relates to the 800 dollars, and the 400 dollars. The counsel may be correct in the inference that the sum of 800 dollars was not actually paid; but it is but an inference, from the evidence, and that against the terms of the agreement and receipt. It would, perhaps, be as reasonable to infer, that the creditors of Gibson, an absentee, learning that his attorney in fact, also a resident of a distant state, had sold his land and received part payment, sued out the writs, and compelled him to give the security. Whatever may have been the fact, in what attitude do these transactions place Gibson towards third persons, viewing them as his own acts ? (and in that aspect they must be contemplated). He sells his land, and makes a conveyance, in which the receipt of the purchase money is acknowledged: he takes on the same day an agreement from his vendee reciting the terms of the contract, in which the payment of this 800 dollars is admitted: and by another receipt, bearing the same date, it appears this money was deposited to remain with Woodson until the decision of certain suits. Suppose the money had been actually paid to Gibson, and in an hour afterwards, he had been held to bail in suits which he intended to controvert, and had deposited this money with his bail. Upon the payment of the money the lien was gone. Could the deposit with the bail, who happened to be the vendee, revive it ? The cases in which it has been held, that the receipt for the purchase money is not sufficient to repel the presumption of law, are cases where there was no change in the original contract : the vendor had taken the bond or agreement of the vendee for the payment of the purchase money at the times stipulated. But in a case like the present, how *346 could the vendor have sued for this 800 dollars at law ? Not on the original contract, for that recited its payment. He must have recovered in an action for mo-ney had and received, and upon proving that the writs of ne exeat had been dismissed, as it appears they were, and exhibiting the receipt, his case would have been made out. The consideration, then, would have been the money deposited, and not the land sold. For this deposit he necessarily looked to the personal credit of Woodson; and if so, his lien was gone. For it never exists when the circumstances shew an intention not to rely on it. And as it regards a third person, a fair purchaser, would it not be grossly unjust to charge the property in his hands ? He sees in the hands of his immediate vendor, the deed, the counterpart of the agreement, and the receipt. Can he suppose, with these papers before him, that the land is still looked to for the security of the purchase money, in the face of the agreement acknowledging payment, and of a receipt shewing a deposit of the money with the vendee to meet a possible and distant liability ? No man, it seems to me, could have supposed he was incurring danger in purchasing under such circumstances. The case, it strikes me, is stronger against the lien than the case of White v. Wakefield. In that case, the purchase was made by one of several trustees, the money to be derived from a trust fund. The business was transacted by one of the trustees, and the vendor acknowledged the receipt of the whole of the purchase money in the deed, and by a receipt endorsed on it; but a portion of the money was retained by the trustee. There was an account between the vendor and acting trustee, shewing how the balance of the pinchase money was paid, and reciting that a sum was retained until the deeds were executed and legal matters completed, and that it was to bear interest. The vendor took a lease of the property, and so continued in possession. The case was decided against the lien, *347 upon the ground, however, that the vendor had dealt in this way with one of the trustees without the knowledge or concurrence of the others. They had a right to suppose the trust fund had been properly applied, and it would have been a fraud on them to permit the lien under such circumstances to be set up against the estate. The case shows, that where, from the circumstances, third persons have a right to suppose personal credit is given, the lien will not be established against them, even although the vendor held possession of the estate under a contract of lease. As to the 800 dollars, therefore, I think the transactions shewed that no lien was retained or contemplated, and that whether Redford had notice of these transactions or not, is not material. Indeed, I have proceeded upon the concession, that the papers disclosing to him all that now appears to the court, were exhibited to him, and that Gibson, by putting it in the power of his vendee to exhibit them, has deprived himself of all right as against such vendee to charge the land.
The 400 dollars, retained by Woodson to indemnify himself against the claim of mrs. Gibson for dower, I think is a lien on the land. There is nothing in the circumstances indicating any intention to waive the lien as to this sum. The purchase money being an equitable lien, it devolves on the purchaser to shew circumstances indicating an intention not to insist on it. The postponement of the payment to an indefinite time, does not, it seems to me, of itself shew such intention. The authority of Winter v. Ld. Anson, relied on to shew that in such a case there was no lien, was reversed by the lord chancellor on appeal. There, Mousley purchased the estate of Winter. The conveyance expressed that the whole purchase money was paid ; in fact, but a portion was paid; Mousley executed his bond for the remainder of the purchase money, payable within twelve months after the decease of Winter. The vice chancellor dismissed the bill. The case came up on an ap *348 peal before the lord chancellor, who said, “In general, where a bill, note, or bond is given for the whole or any part of the purchase money, the vendor does not lose his lien for so much of the money as remains unpaid. The circumstance, that the money is secured to be paid at a future day, does not affect the lien. I do not think that the lien is affected by the fact of the- period of payment being dependant on the life of the vendor. That circumstance does not appear to me to afford such clear and convincing evidence of the intention of the vendor to rely, not upon the security of the estate, but solely upon the personal credit of the vendee, as would be necessary in order to get rid of the lien. It would not be inconsistent with an express pledge, and I do not perceive why it is at variance with the lien resulting from the rules of a court of equity.” In this case, the payment depended on the contingency of the wife surviving the husband and asserting her title to dower, and the agreement between the parties shewed it was held for the purpose of meeting that liability. Of this the purchaser had full notice, and admits it in his answer. I think, under such circumstances, he took the property subject to this charge.
It is objected that there is no evidence in the record of the death of mrs. Gibson. There was a reference to a commissioner to ascertain the outstanding incumbrances: he reported that mrs. Gibson was dead, so that her dower claim constituted no charge on the estate; and to this report there is no exception on that account. The matter reported on was embraced in the scope of the enquiries submitted to the commissioner. The evidence upon which he proceeded, does not appear by his report: if upon the letter filed, although it is not proved so as to make it evidence, it may have been admitted; or other evidence of the fact may have been before him. If the correctness of his conclusion had been controverted by an exception, evidence upon the point might *349 have been filed. It would be a surprise on the party, to • -t • . . permit the exception to be taken m the appellate court.
I think, however, the court erred in not making some provision to secure the purchaser against the charge ereated by the decree in favour of White fy co. The purchaser was not entitled to a credit; for it does not appear certainly, that the land will be sold under the decree. Still there is enough in the proceedings in that case, to render it very probable that the land will eventually have to be sold to satisfy the claim. The charge is one which Gibson was bound to remove; it creates a cloud on the title, and a sale under such circumstances would necessarily be attended with a sacrifice. If the land is subjected to this charge, Redford would have a right to call upon Woodson’s estate for indemnity. Under these circumstances, Gibson is not entitled to a decree against either Woodson or the land, until this incumbrance, which it was his duty to remove, is extinguished.
Therefore, it seems to me, the decree should be reversed with costs, and the cause remanded for further proceedings, with instructions, that the land in the hands of the appellant Redford is liable to the payment of the 400 dollars only, retained in the hands of Wood-son to meet the claim of dower, with interest thereon from the time of the purchase; and that Gibson is not entitled to a decree for any part of the purchase money, until it shall be shewn that the land has been exonerated from any incumbrance growing out of the suit of White Sf co. against him.
The other judges concurred—Decree reversed, and cause remanded &c.